**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW G. PALMER, | ) | CASE NO. 5:18-cv-01111 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| DAVE MARQUIS, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Andrew G. Palmer, ("Petitioner" or "Palmer"), challenges the constitutionality of his conviction in the case of *State v. Palmer*, Summit County Court of Common Pleas Case No. 2015-CR-12464. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1, PageID# 19). Warden Dave Marquis ("Respondent") filed an Answer/Return of Writ (R. 10) and a supplemental Return of Writ (R. 17). Petitioner filed a Traverse (R. 19), to which Respondent filed a reply. (R. 25). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court

factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

Ninth District Court of Appeals (hereinafter "state appellate court") summarized the facts

underlying Petitioner's conviction as follows:

> [*P2]   Akron Police Detective Chris Carney works in parcel interdiction with his
> K-9 partner named "Cruiser." Cruiser alerted to a FedEx parcel sent by Mr.
> Palmer to someone in California. Detective Carney obtained a warrant to search
> the parcel and discovered $18,000.00 in cash inside.
>
> [*P3]   The next day, Detective Carney performed a "knock and talk" at Mr.
> Palmer's house along with Detectives Nicholas Gray and Matt Akers. Detective
> Carney knocked on the front door for about five minutes before Mr. Palmer
> eventually opened it. The officers soon entered the house and engaged Mr. Palmer
> in a discussion in his living room about the FedEx parcel. Mr. Palmer admitted to
> sending the money and offered different stories explaining the cash shipment. He
> said it was for a business for his nephew, but later said it was for a marijuana
> investment out in California. Detective Carney noticed a jar of marijuana on a
> table in the dining room. Mr. Palmer was arrested and the officers waited while
> they secured a search warrant for the house. Mr. Palmer had $495.00 in cash on
> his person. While awaiting the search warrant for the house, UPS delivered
> another parcel to Mr. Palmer's house. Mr. Palmer refused to allow the police to
> open the UPS parcel and told them that they needed a warrant.
>
> [*P4]   The officers procured search warrants for the house and the UPS parcel. In
> the house, they discovered $5,980.00 in cash hidden in a work boot or shoe, a
> pound of marijuana in a vacuum-sealed bag at the bottom of a clothes basket, and
> other contraband. In the UPS parcel, they discovered three more pounds of
> marijuana in vacuum-sealed bags.

*State v Palmer*, 2017-Ohio-2639, 2017 Ohio App. LEXIS 1650, 2017 WL 1749087 (Ohio App.

May 3, 2017)).

## II.   Procedural History

### A.   Conviction

On May 6, 2015, a Summit County Grand Jury issued a three-count indictment charging

Palmer as follows: one count of possession of marijuana in violation of Ohio Revised Code ("O.R.C.") § 2925.11(A)(C)(3) along with a criminal forfeiture specification of $24,475.00; one count of trafficking in marijuana in violation of O.R.C. § 2925.03(A)(C)(3) along with a criminal forfeiture specification of $24,475.00; and, one count of having weapons while under disability in violation of O.R.C. § 2923.13(A)(2)/(3). (R. 10-1, PageID# 115-117; Exh. 2). Palmer, represented by counsel, entered a plea of "not guilty." (R. 10-1, PageID# 118; Exh. 3).

On July 7, 2015, Palmer, through counsel, moved to suppress evidence seized from a house on McKinley Avenue in Akron, Ohio and statements Palmer made to the police. (R. 10-1, PageID# 119-123; Exh. 4). The trial court commenced a suppression hearing on July 24, 2015. Several witnesses testified, but the hearing was not concluded and continued until August 13, 2015. (R. 10-2; Tr. 1-78). On August 12, 2015, prior to the continuation of the hearing, Palmer filed a Supplemental Motion to Suppress. (R. 10-1, PageID# 124-126; Exh. 5). In that motion, Palmer sought to suppress evidence seized from a FedEx package and a UPS package. *Id*. The court received additional testimony on August 18, 2015. (R. 10-3; Tr. 1-92). On October 14, 2015, the trial court denied the motions to suppress. (R. 10-1, PageID# 132-140; Exh. 7).

On January 19, 2016, Palmer, through new defense counsel, filed a motion for leave to file a motion to suppress.[1] (R. 10-1, PageID# 141; Exh. 8). On March 21, 2016, Palmer filed a

---

[1] According to Respondent, the trial court never ruled on the motion for leave. (R. 10, PageID# 41). In its ruling on Palmer's written exceptions to the court's prior order denying the motion to suppress, the trial court explained that:

It is undisputed that the counsel who is filing the motion was not present or engaged on behalf of Defendant at the earlier suppression hearing and when the Court's order was issued. The Court finds that prior counsel was capable and engaged and fully and fairly litigated those issues. All the issues raised in the Written Exceptions filed by Defendant's more recently engaged counsel were considered. The fact that counsel disagrees with the result on points the Court acknowledged does not form a basis for

Motion for Return of Seized Money, again claiming there was no reason to seize the money found in the FedEx package. (R. 10-1, PageID# 143-145; Exh. 9). On the same date, Palmer also filed written exceptions to the trial court's prior order denying the motion to suppress. (R. 10-1, PageID# 146-154; Exh. 10). On May 19, 2016, the trial court overruled Palmer's exceptions and treated the Motion to Return Money as a motion to suppress, which it opined was "[i]n all likelihood … untimely … and likely contraband related to Defendant's current charges but the Court will consider the issue at the final pretrial …." (R. 10-1, PageID# 158; Exh. 12). At the final pretrial, the motion was denied. (R. 10-1, PageID# 160; Exh. 13).

On June 6, 2016, the matter proceeded to a jury trial. (R. 10-1, PageID# 166; Exh. 15). The jury found Palmer guilty of possession of marijuana and trafficking marijuana, but not guilty of having weapons while under disability. (R. 10-1, PageID# 161-165; Exh. 14). The jury also found that the full amount of $24,475.00 was not subject to forfeiture on Count One or Count Two, but that the lesser amount of $23,980.00 was subject to forfeiture on Count Two. *Id*.

On June 22, 2016, Palmer filed an "Alternative Motion for Judgment of Acquittal or For a New Trial." (R. 10-1, PageID# 168-175; Exh. 16). The motion was denied. (R. 10-1, PageID# 176; Exh. 17). On June 29, 2016, the court determined Palmer's two convictions were allied offenses of similar import and merged them for sentencing. Palmer was sentenced to thirty months in prison. The seized $23,980.00 was ordered forfeited. *Id*.

**B.   Direct Appeal**

On July 20, 2016, Palmer, through trial counsel, filed a Notice of Appeal. (R. 10-1,

---

setting aside or again litigating the issues.

(R. 10-1, PageID# 158; Exh. 12).

PageID# 178; Exh. 18). In his brief, Palmer raised the following assignments of error:

1. Once it is determined (in a search) that a first-class mail package does not contain any contraband, thus lacking any probable cause to do so, any further detention (of the mailed package) violates the Fourth Amendment. With this being so, the court erred when it refused to grant the motion to suppress and order the return of the money to the sender.

2. Given the fact that it is indisputable the FedEx package the officer extracted from the mail did not contain any contraband. It follows his further detention and retention of this package, on his own authority, violated the Fourth Amendment; hence the court erred when he denied the motion to suppress and when he refused to order the money returned to the appellant.

3. One who opens the door of his home in the wake of persistent demands of the police does not do so voluntarily. With this being so, the court erred when it ruled the entry here as consensual.

4. Given a jury's question which asked, in effect: Whether the "G" (the middle initial of the defendant as indicated in the indictment) was consistent with the name "Greg Palmer" to whom the UPS package (critical in this case) was mailed, the court erred and denied due process when it, not only, refused to take judicial notice but also when it failed to instruct the jury the defendant's middle name was not Greg.

5. With forfeiture being part of a defendant's sentence, it follows that any property fofeited [sic] must be shown to have had a connection with the offense, or offenses, of conviction. With this being so, the absence of any such proof here renders the forfeiture decreed [sic] indefensible.

6. The court erred when it ruled the verdict finding the accused guilty was sufficient to establish guilt beyond a reasonable doubt.

(R. 10-1, PageID# 187-235; Exh. 21).

On May 3, 2017, the state appellate court affirmed the judgment of the trial court. (R. 10-1; Exh. 24).

On June 12, 2017, Palmer, *pro se*, filed a Notice of Appeal with the Ohio Supreme Court under Case No. 2017-0785. (R. 10-1, PageID# 290-291; Exh. 25). In his memorandum in support of jurisdiction, Palmer raised largely verbatim the same six assignments of error raised below as

propositions of law. (R. 10-1, PageID# 292-326; Exh. 26). On September 27, 2017, the Supreme

Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

(R. 10-1, PageID# 328; Exh. 28).

**C. Application to Reopen Appeal**

On July 21, 2017, Palmer, *pro se*, filed an application for reopening his appeal pursuant to

Ohio App. R. 26(B). (R. 10-1, PageID# 329-366; Exh. 29). As grounds for reopening the appeal,

Palmer claimed that appellate counsel had provided ineffective assistance for not raising the

following assignments of error on appeal:

1. Appellant's Sixth Amendment right to effective assistance of counsel when counsel failed to move to suppress evidence based on the following grounds:

   (1). The police officer lacked reasonable suspicion to initially seize the FedEx package for the purpose of subjecting to a dog sniff test.

   (2). When the police officer seized the FedEx package, removed the package from the mainstream of mail, took the package the FedEx premises, drove the package to the courthouse, and then took the package to the judge's chambers, all before obtaining a warrant, violated the Fourth Amendment to the United States Constitution; and the Ohio Constitution, Article I, Section 14.

   (3). Appellant was denied the effective assistance of suppression hearing counsel and trial counsel when both failed to challenge the insufficient proof of a complete chain of custody relating to the FedEx package.

   (4). Appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred and abused its discretion when it denied the motion to suppress the search warrant issued on April 21, 2015 where the evidence clearly showed that Detective Carney lied about the circumstances concerning the seizure of the package and issue of the warrant.

   (5). Appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred and abused its discretion when it denied the motion to suppress the evidence based on an unlawful

search and seizure where there was never a timely warrant issued
granting Detective Carney permission to seize and search.

(6).    Appellate counsel was ineffective for failing to raise on direct
appeal the ineffective assistance of suppression hearing counsel
where counsel filed to challenge the search warrant affidavit on the
grounds that the affidavit contained false information provided by
Detective Carney relating to reasonable suspicion.

(7).    Appellate counsel was ineffective for failing to raise on direct
appeal that the search warrant was too vague to be enforced.

(8).    Appellate counsel was ineffective for failing to raise on direct
appeal that trial counsel committed error and abused its discretion
when during the suppression hearing the court abandoned its role
as a neutral arbiter and assumed the role of an advocate when it
cross-examined a witness called by the State in such a manner that
violated Evid.R. 614(B) when he asked over 56 questions in a role
[sic].

(9).    Appellate counsel was ineffective for failing to raise on direct
appeal the issue of prosecution misconduct where the State
withheld/suppressed evidence favorable to the accused.

(10).   Appellate counsel was ineffective for failing to argue on direct
appeal the ineffective assistance of suppression hearing counsel
where counsel failed to move to suppress the evidence based on
the ground of illegal search of the house where the police officer
viewed inside of the house by looking through a one inch opening
between slats of a blind hanging from the window.

(11).   Appellate counsel was ineffective for failing to raise on direct
appeal that the sentencing journal entry contained a jurisdictional
error on the jury verdict of the forfeiture of money seized.

(12).   Appellate counsel was ineffective for failing to raise on direct
appeal that the trial court erred when it failed to allow the
forfeiture specification determination to be performed by the jury
in contravention of R.C. 2981.04(B).

*Id*. On September 7, 2017, the state appellate court denied Palmer's application to reopen. (R.

10-1, PageID# 367-370; Exh. 30).

On October 16, 2017, Palmer, *pro se*, filed a Notice of Appeal with the Ohio Supreme

Court. (R. 10-1, PageID# 371-372; Exh. 31). In his memorandum in support

of jurisdiction, he raised the following propositions of law:

I.    A court of appeals misapplied federal and state case law concerning the right to effective assistance of counsel by finding that appellate counsel was effective despite failing to raise colorable claims on the ground that the attorney raised a completely separate claim.

II.    Appellant's Sixth Amendment right to effective assistance of counsel was violated during the suppression hearing where counsel failed to move to suppress the evidence contained in the FedEx package because the police officer lacked reasonable suspicion to initially seize the package for the purpose of subjecting that package to a dog sniff test.

III.    When the police officer seized the FedEx package, removed the package from the mainstream of mail, took the package off the FedEx premises, drove the package to the courthouse, then took the package to the judge's chambers, before obtaining a warrant to do so, violated the Fourth Amendment of the United States Constitution, and Ohio Constitution.

IV.    Appellant was denied effective assistance of suppression hearing counsel where counsel failed to challenge the insufficient proof of a complete chain of custody relating to the FedEx package.

V.    Appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred and abused its discretion when it denied the motion to suppress the search warrant, issued April 21, 2015, when the evidence clearly showed that Detective Carney lied about the circumstance regarding the seizure of the FedEx package that resulted in issuance of the warrant.

VI.    Appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred and abused it [sic] discretion when it denied the motion to suppress the evidence based on an unlawful search and seizure when there was never a timely warrant issued granting Detective Carney permission to seize and search.

VII.    Appellate counsel was ineffective for failing to raise on direct appeal the ineffective assistance of suppression hearing counsel when counsel failed to challenge the search warrant affidavit on the grounds that it contained false information relating to reasonable suspicion.

VIII.    Appellate counsel was ineffective for failing to raise on direct appeal that trial court committed plain error and abused its discretion when during the

suppression hearing the court abandoned its role as a neutral arbiter and assumed the role of an advocate when it cross-examined a witness called by the State in such a manner that violated Evid.R. 614(B) when he asked over 56 questions in a role. [sic]

IX.     Appellate counsel was ineffective for failing to raise on direct appeal prosecution misconduct when the State intentionally withheld-suppressed evidence favorable to the accused.

X.      Appellate counsel was ineffective for failing to argue on direct appeal the ineffective assistance of suppression hearing counsel when counsel failed to move to suppress the evidence based on the ground of illegal search of the house where the police officer viewed inside of the house by looking through a one inch opening between slats of a blind hanging from the window.

XI.     Appellate counsel was ineffective for failing to raise on direct appeal that the sentencing journal entry contained a jurisdictional error on the jury verdict of the forfeiture of seized money.

(R. 10-1, PageID# 373-392; Exh. 32). On December 20, 2017, the Supreme Court of Ohio

declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1,

PageID# 394; Exh. 34)

**D.   Motion to Vacate and Petition for Post-Conviction Relief**

On March 28, 2017, while his appeal was still pending, Palmer, *pro se*, filed a "Motion to

Vacate Void Journal and Issue a Nunc Pro Tunc Entry of Correction." (R. 10-1, PageID# 395-

396; Exh. 35). The trial court denied the motion noting that Palmer already had a direct appeal

pending. (R. 10-1, PageID# 397; Exh. 36).

On June 2, 2017, Palmer, *pro se*, filed a Petition to Vacate or Set Aside Judgment of

Conviction and Sentence. (R. 10-1, PageID# 398-424; Exh. 37). Palmer made the following

claims:

1.      Petitioner's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel when his counsel failed to move to suppress evidence obtained from the FedEx package because it

was seized and subjected to a dog sniff test without reasonable articulable suspicion. Due to counsel's failure to move to suppress the evidence under the unlawful seizure, counsel did not provide objectively reasonable assistance and Petitioner was prejudiced as a result of this failure. Strickland v. Washington (1984), 466 U.S. 668, and Article I, 1, 2, 5,9,10 16 and 20 if the Ohio Constitution.

2.  Trial court erred in finding probable cause for issuance of the search warrant, because the only material allegation in the affidavit to support the initial seizure, and dog sniff is the alleged large size of the package and the weight.

3.  Petitioner's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel when his trial counsel failed to: (1) challenge the insufficient proof of a complete chain of custody and/or the introduction of the FedEx package into the evidence without first establishing the proper chain of custody.

4.  Petitioner Palmer's conviction and sentence are void and/or voidable because the State failed to notify petitioner of potential exculpatory evidence prior to trial, and then destroyed that evidence immediately following trial in violation of Ohio and federal law. *Brady v. Maryland*, 373 U.S. 83; *Kyles v. Whitley*, 514 U.S. 419; *Arizona v Youngblood*, 467 U.S. 479; U.S. Const. Amends. VI, XIV; Ohio Const. Sections 1 & 10, Art. I.

*Id*. On June 26, 2017, the court denied the petition for post-conviction relief finding that Palmer raised these claims on direct appeal (with the exception of his claims regarding ineffective assistance of counsel), and that his claims of ineffective assistance of counsel are unsupported by the record and his petition. (R. 10-1, PageID# 442-444; Exh. 43).

On July 25, 2017, Palmer, *pro se*, appealed to the state appellate court. (R. 10-1, PageID# 445; Exh. 44). Palmer raised the following assignments of error:

1.  The trial court committed prejudicial error by ruling that some of the claims raised in the post-conviction petition had already been raised on direct appeal without stating on the record which claims had already been raised, or, without properly applying the doctrine of *res judicata*.

2.  The trial court committed prejudicial error when it applied the standards of *Strickland v. Washington* incorrectly in evaluating the ineffective

assistance of counsel claims.

3.    The trial court committed prejudicial error in denying petitioner's postconviction relief without addressing the ineffective assistance of counsel claims.

4.    Appellant was denied effective assistance of counsel during the suppression hearing when counsel failed to move to suppress evidence obtained from the FedEx package when (a) the package was seized prior to the establishment of reasonable articulable suspicion in order to subject it to a dog sniff test; and, (b) the police officer seized the package a second time, removed the package from the FedEx building, drove the package to the courthouse, took the package to the judges chambers, and then sought a warrant to seize and open the package.

5.    The trial court erred in finding probable cause to issue a search warrant to search the FedEx package where the affidavit lacked sufficient factual grounds to issue the search warrant.

6.    Appellant was denied effective assistance of counsel when counsel failed to challenge the insufficient proof of a complete chain of custody of the FedEx package ….

7.    Appellant was denied a fair trial when the prosecutor withheld exculpatory evidence, and then destroyed that evidence immediately following trial, in violation of Ohio and federal law pursuant to Brady v. Maryland, 373 U.S. 83.

8.    The trial court committed prejudicial error in its judgment, when the trial court ruled that appellant's petition failed to contain sufficient evidence to support his request for an evidentiary hearing.

(R. 10-1, PageID# 446-466; Exh. 45). On April 18, 2018, the state appellate court affirmed the

judgment of the trial court. (R. 10-1, PageID# 486-497; Exh. 47).

On May 21, 2018, Palmer, *pro se*, filed a Notice of Appeal with the Ohio Supreme Court.

(R. 10-1, PageID# 498-499; Exh. 48). In his memorandum in support of jurisdiction, he raised

the following propositions of law:

I.    Appellant was denied the effective assistance of counsel during the suppression hearing where counsel failed to move to suppress evidence obtained from the FedEx package due to it being seized, detained and

subjected to an alleged dog sniff test without first establishing a
reasonable articulable suspicion prior to the seizure.

II.    The trial court erred in issuance a search warrant for the FedEx package
where the information contained in the affidavit lacked sufficient
information supporting probable cause; thus, the affidavit contained
false information.

III.    The appellant was denied the effective assistance of counsel during
the suppression hearing where counsel failed to challenge the
insufficient proof of a complete chain of custody of the FedEx package.

IV.    Appellant was denied adequate due process of law where the prosecutor
withheld/suppressed and destroyed potentially exculpatory evidence
prior to trial, and after trial.

(R. 10-1, PageID# 500-519; Exh. 49).

On July 18, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal

pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, PageID# 521; Exh. 51).

**E.    Federal Habeas Petition**

Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus, dated May 4, 2018 (R. 1,

PageID# 19), asserting the following eighteen grounds for relief:

GROUND ONE: Pursuant to United States Supreme Court case law, once it is
determined (in a search) that a FedEx package does not contain any contraband,
thus lacking any probable cause to do so, any further detention (of the mailed
package) violates the Fourth Amendment. The trial court erred when it refused to
grant the motion to suppress and order the return of the money to the sender.

GROUND TWO: The further detention and retention of the FedEx package
while knowing the indisputable fact that the FedEx package the officer extracted
from the mail did not contain any contraband, violated the Fourth Amendment;
hence the court erred when it denied the motion to suppress and when it refused to
order the money returned to the appellant.

GROUND THREE: The court erred when it ruled the police entry into
petitioner's home was consensual.

GROUND FOUR: The court erred and denied due process when it not only,
refused to take judicial notice, but also when it failed to instruct the jury the

12

petitioner's middle name was not Greg.

GROUND FIVE: The evidence is insufficient as a matter of law to support the forfeiture sentence with forfeiture being part of a defendant's sentence; it follows that any property forfeited must be shown to have had a connection with the offense, or offenses of conviction. The absence of any such proof renders the forfeiture decreed indefensible.

GROUND SIX: The evidence was insufficient as a matter of law to establish guilt beyond a reasonable doubt that petitioner actually possessed the UPS parcel.

GROUND SEVEN: Petitioner was denied the effective assistance of appellate counsel; pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise the following issue on direct appeal that was clearly stronger than issue presented by counsel. To Wit:

(a)     Petitioner's Sixth Amendment right to effective assistance of counsel was violated during the suppression hearing where counsel failed to move[] to suppress the evidence contained in the FedEx package on the ground that the police officer lacked reasonable suspicion to initially seize the package.

GROUND EIGHT: Petitioner was denied the effective assistance of appellate counsel; pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise on direct appeal the following issue that is clearly stronger than issues presented by counsel.

(a)     Petitioner was denied the Fourth Amendment protection against unlawful search and seizure where the police officer seized the FedEx package without reasonable suspicion, removed the package from the mainstream of mail, removed the package off FedEx premises without a warrant, held the package for several hours before taking the package to the courthouse into the judge's chambers, without having a warrant.

GROUND NINE: Petitioner was denied the effective assistance of appellate counsel; pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise the following issue on direct appeal that is clearly stronger than the issues counsel presented on appeal. To Wit:

(a)     Petitioner was denied effective assistance of suppression hearing counsel where counsel failed to challenge the insufficient proof of a complete chain of custody relating to the FedEx package.

GROUND TEN: Petitioner was denied the effective assistance of appellate counsel, pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where

counsel failed to raise on direct appeal the following issue that is clearly stronger than issues counsel presented. To Wit:

(a)     The trial court erred and abused its discretion by denying the motion to suppress the evidence obtained from the search warrant, issued on April 21, 2015, where it is clear that Detective Carney lied on the circumstance regarding the seizure of the FedEx package that resulted in issuance of the warrant.

GROUND ELEVEN: Petitioner was denied the effective assistance of appellate counsel; pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise the following issue on direct appeal that is clearly stronger than issue counsel presented on appeal.

(a)     The trial court committed reversible error and abused its discretion when it denied the motion to suppress where evidence on the record clearly showed that there was an unlawful search and seizure due to the failure of the police officer to obtain a warrant.

GROUND TWELVE: Petitioner was denied the effective assistance of appellate counsel; pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise the following issue on direct appeal that is clearly stronger than issue counsel presented on appeal.

(a)     Petitioner was denied the effective assistance of counsel during the suppression hearing when counsel failed to challenge the search warrant affidavit on the grounds that it contained false information relating to establishing reasonable suspicion.

GROUND THIRTEEN: Petitioner was denied the effective assistance of appellate counsel; pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise the following issue on direct appeal that is clearly stronger than the issues counsel presented on appeal. To Wit:

(a)     Petitioner was denied Fourteenth Amendment due process protection to a fair trial where the prosecutor intentionally withheld suppressed evidence favorable to defendant[.]

GROUND FOURTEEN: Petitioner was denied the effective assistance of appellate counsel pursuant to the holding set forth in *Smith v Robbins*, 528 U.S. 259, where counsel failed to raise the following issue on direct appeal that is clearly stronger than the issues counsel presented on appeal.

(a)     Petitioner was denied the effective assistance of counsel during the

14

suppression hearing where counsel failed to argue illegal search where during the knock and talk the police officers viewed inside the house by peeking through the window on the front porch in violation of the fourth and fourteenth amendment.

GROUND FIFTEEN: Petitioner was denied the effective assistance of counsel during the suppression hearing where counsel failed to move to suppress evidence obtained from the FedEx package because it was seized without there being a reasonable articulable suspicion established.

GROUND SIXTEEN: The trial court committed reversible error in finding probable cause for issuance of the search warrant because the only material allegation in the affidavit to support the initial seizure is the false claim of the size and weight of the package.

GROUND SEVENTEEN: Petitioner was denied the effective assistance of counsel during the suppression hearing were counsel failed to challenge the insufficient proof of a complete chain of custody and/or the introduction of the FedEx package into evidence without first establishing a proper chain of custody.

GROUND EIGHTEEN: Petitioner was denied Fourteenth Amendment due process protection to a fair trial based on prosecution misconduct for withholding and/or suppressing exculpatory evidence prior to trial.

(R. 1 & 11).

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160

(6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

## B. Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S.

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the court decides: (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) "whether the state courts actually enforced the state procedural sanction[,]" (3) whether the state procedural bar is an independent and adequate state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C. Whether Petitioner Defaulted Grounds Four, Eight, Sixteen and Eighteen**

Respondent contends that Palmer has defaulted his fourth, eighth, sixteenth, and eighteenth grounds for habeas relief. (R. 10, PageID# 63-65, 81-82, 98-103; R. 17, PageID# 1171-1173). In his traverse, Petitioner agreed with Respondent's procedural default argument with respect to ground four and "hereby waives this issue as the procedural default was enforced

18

against petitioner …." (R. 19, PageID# 1184). Because Petitioner agrees with Respondent that his fourth ground for relief is defaulted and because he has not asserted any basis for the court to excuse default with respect to that particular claim, ground four should be dismissed as defaulted.

In ground eight, Petitioner asserts he was denied the effective assistance of appellate counsel, because on direct appeal, counsel failed to argue that he was denied "his Fourth Amendment protection against unlawful search and seizure where the police officer seized the FedEx package without reasonable suspicion, removed the package from the mainstream of mail, removed the package off FedEx premises without a warrant, held the package for several hours before taking the package to the courthouse into the judge's chambers, without having a warrant." (R. 1, PageID# 11-12). Respondent contends ground eight is procedurally defaulted because Palmer has never fairly presented it to the Ohio courts through the "only mechanism for presenting a claim of ineffective assistance of appellate counsel," which is an application to reopen his appeal under Ohio App. R. 26(B). (R. 10, PageID# 81). While acknowledging Palmer raised numerous claims of ineffective assistance of counsel, Respondent avers that this particular argument was not raised. *Id*. Respondent asserts that a petitioner is limited to raising the same ineffective assistance of counsel claims, under the same factual and legal theories, as he previously presented in the state courts. (R. 10, PageID# 81, *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)).

The court does not agree with Respondent. Ground eight was sufficiently presented in the Rule 26(B) application to reopen as "Issue #2." (R. 10-1, PageID# 332; Exh. 29). Furthermore, Respondent has failed to argue that the state appellate court or any other state court enforced a procedural default with respect to this claim.

19

Respondent also argues that ground sixteen was defaulted in his supplement to the Return of Writ. (R. 17, # 1171-1172). In ground sixteen, Petitioner asserts that the trial court committed error by finding probable cause for the issuance of a search warrant where the only material allegation in the affidavit was the size and weight of the package. (R. 11, PageID# 1144). Respondent avers that Palmer did not argue this particular claim on direct appeal to the state appellate court or to the Ohio Supreme Court. (R. 17, PageID# 1171). Indeed, Palmer first raised this argument as the second claim in his post-conviction petition to vacate his conviction. (R. 10-1, PageID# 408; Exh. 37). The state appellate court held that Palmer's claim—that the court erred in finding probable cause to issue the search warrant—was an argument that "could have been raised on appeal and is now barred by res judicata." *State v. Palmer*, 2018-Ohio-1486 at ¶¶20, 22, 110 N.E.3d 981 (Ohio Ct. App. 2018).

The Sixth Circuit Court of Appeals has repeatedly held that Ohio's doctrine of *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions. *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("This court has held that [the] rule [requiring claims based on facts in the record to be presented on direct appeal] is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test."); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000). Petitioner's only response is that he raised a similar claim on direct appeal. (R. 19, PageID# 1207). Nearly all of Petitioner's eighteen claims are similar, as most of them raise Fourth Amendment challenges to the search of his residence and seizure of his packages. However, to properly exhaust, Petitioner must raise the *same* claims in state court at the first available opportunity. Further, this court cannot second guess a state court's application of state law. Accordingly, ground sixteen is barred by Ohio's doctrine of *res*

*judicata*. Petitioner has failed to establish any basis for the court to set aside his default.

Finally, Respondent asserts ground eighteen is also defaulted. (R. 10, PageID# 98-103). Therein, Petitioner asserts he was denied a fair trial based on prosecutorial misconduct stemming from the alleged withholding and/or suppressing of exculpatory evidence prior to trial. (R. 1, PageID# 14). Petitioner claims the prosecutor destroyed potential exculpatory evidence relating to the test performed on the money seized in the FedEx package, and destroyed the money immediately after trial. *Id*. Petitioner further alleges the prosecutor destroyed the video footage from the FedEx location relating to the actions of detective Carney during the seizure of the FedEx package and the dog sniff test.[2] *Id*. Palmer first raised this argument as the fourth claim in his post-conviction petition to vacate his conviction. (R. 10-1, PageID# 413; Exh. 37). The state appellate court found as follows:

> The record shows that $23,980.00 in cash was seized and forfeited in this case. *See id*. at ¶ 43. Nothing in the record suggests that the State withheld or destroyed either cash or a FedEx surveillance video. The purported evidence Mr. Palmer attached to his petition includes a self-serving affidavit and other documentation that was either part of the trial court record or was available to Mr. Palmer at the time of his direct appeal. He has not provided any evidence dehors the record that meets the threshold standard of cogency required to overcome the doctrine of res judicata.

*Palmer*, 2018-Ohio-1486 at ¶22.

Petitioner believes the state court improperly applied *res judicata*, arguing that he could not present this claim on direct appeal as it was based on evidence outside the record. (R. 19, PageID# 1211). This argument ignores the state court's explicit finding that Petitioner did not rely on any evidence outside the record, outside of his self-serving affidavit. Therefore, this ground is also procedurally defaulted as it is barred by Ohio's doctrine of *res judicata*. Again,

---

[2] Petitioner believes no dog sniff test ever occurred. (R. 1, PageID# 14).

Petitioner has failed to identify any cause or prejudice to set aside his procedural default.

The court recommends finding that Petitioner defaulted grounds four, sixteen and eighteen, for the foregoing reasons, but does not find ground eight defaulted. The following section analyzes that ground and the remaining grounds on the merits.

## IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.   *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Grounds One through Three: Fourth Amendment Claims**

In his first three grounds for relief, Petitioner raises three separate though related arguments, all asserting the trial court incorrectly decided the Fourth Amendment issues raised at the suppression hearing. (R. 1). Respondent argues that these three grounds are not cognizable upon federal habeas review, as Palmer was afforded an opportunity to fully and fairly litigate his Fourth Amendment claims under *Stone v. Powell*, 428 U.S. 465, 494 (1976). (R. 10, PageID# 61-63).

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See Stone*, 428 U.S. at 494 (1976); *Wallace v. Kato*, 549 U.S. 384,

395 n. 5, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *accord In re Irby*, No. 19-3584, 2019 U.S.

App. LEXIS 38722, at *4-5 (6th Cir. Dec. 30, 2019) (asserting "long standing precedent renders

such [exclusionary rule] claims non-cognizable on collateral review where the prisoner had 'full

and fair' opportunity to litigate the 'Fourth Amendment claim' on direct review."); *Ewing v.*

*Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005). The Sixth Circuit has found that:

> In order to determine whether a petitioner received a "full and fair" opportunity to
> litigate a Fourth Amendment claim, we apply a two-part test. First, we "must
> determine whether the state procedural mechanism, in the abstract, presents the
> opportunity to raise a fourth amendment claim[,]" and second, we "must
> determine whether presentation of the claim was in fact frustrated because of a
> failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). In
> performing this analysis, we do not review the "correctness" of the state court
> decision. *Id.*

*Fulcher v. Logan Cty. Circuit Court*, 459 Fed. App'x 516, 521 (6th Cir. 2012).

As set forth in the aforementioned procedural history, Palmer's defense counsel filed a

motion to suppress, including a supplemental motion, seeking to suppress evidence seized from a

house on McKinley Avenue in Akron, Ohio, Palmer's statements to the police, and evidence

seized from FedEx and UPS packages. (R. 10-1, PageID# 119-126; Exhs. 4 & 5). The trial court

commenced a suppression hearing, which was continued, and resumed later for additional

testimony. (R. 10-2, Tr. 1-78; R. 10-3; Tr. 1-92). Subsequently, the trial court issued a ten-page

order explaining why the motion to suppress was denied. (R. 10-1, Exh. 7).

In addition, after Palmer, through counsel, raised the issues on direct appeal, the state

appellate court conducted a thorough analysis, and found no error in the trial court's denial of the

motion to suppress. (R. 10-1, Exh. 24). The state appellate court explained:

> [*P8] In his first, second, and third assignments of error, Mr. Palmer argues that
> the trial court erred in denying his motion to suppress because (1) the officers

unlawfully retained the FedEx package after searching it and discovering only cash inside, and (2) he did not voluntarily consent to the officers' entry into his house. We disagree.

[*P9] A motion to suppress presents a mixed question of law and fact:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8, 797 N.E.2d 71.

[*P10] In his motion to suppress, Mr. Palmer requested "an Order suppressing all oral statements made to law enforcement officers during the course of the illegal detention and subsequent searches conducted in this matter" because "law enforcement entered [his] residence without invitation and without consent" and "illegally gathered information was used to secure a search warrant for [his] residence * * *." Therefore, "sufficient probable cause did not exist for the judge to issue the search warrant [for the house.]"

[*P11] Initially, we note that the motion did not address any alleged unlawful retention of the FedEx parcel. At the two suppression hearings, Mr. Palmer challenged the officers' entry into his house and the validity of the initial search warrant to open the FedEx parcel. He did not make any argument to the trial court regarding any unlawful retention of the FedEx parcel by police after it was searched and only cash was found inside. Accordingly, Mr. Palmer has forfeited this particular issue for purposes of appeal and we decline to address it. *See State v. Clayton*, 9th Dist. Summit No. 27290, 2015-Ohio-663, ¶14.

[*P12] Mr. Palmer also argues that he did not voluntarily consent to the police officers entering his house. The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." Article I, Section 14, of the Ohio Constitution contains nearly identical language. "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies." *State v. Hetrick*, 9th Dist. Lorain

No. 07CA009231, 2008-Ohio-1455, ¶19; citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

[*P13] The Supreme Court of Ohio has explicitly recognized consent as an exception to the warrant requirement. *Id.* at ¶21. "Where [a] police officer reasonably relies upon consent given by an occupant of [a] premises to enter upon the premises, the entry upon the premises does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures." *State v. Harris,* 2d Dist. Montgomery No. 19479, 2003-Ohio-2519, ¶22, citing *Illinois v. Rodriguez*, 497 U.S. 177, 187, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). "Whether consent was voluntarily given is a question of fact to be determined from the totality of the circumstances, and the government bears the burden of showing that consent was 'freely and voluntarily' given by 'clear and positive' evidence." *State v. Cumming*s, 9th Dist. Summit No. 20609, 2002-Ohio-213, 2002 WL 57979, *3.

> A person can demonstrate consent to enter either expressly or impliedly. Courts have found such actions as opening a door and stepping back, or leading an officer through an open door without expressing an intent that he should not follow constitute implied consent. Further, voluntarily opening a door constitutes voluntary consent to step into the threshold of an apartment.

(Citations omitted.) *State v. Cooper*, 9th Dist. Summit No. 21494, 2003-Ohio-5161, ¶19.

[*P14] At the two suppression hearings, the trial court heard conflicting testimony regarding the circumstances surrounding the officers' initial entry into Mr. Palmer's house from six different witnesses, including three police detectives, Mr. Palmer, a neighbor who lives down the street, and a woman who was in a nearby driveway getting her brakes fixed.

[*P15] Detective Carney testified that he asked Mr. Palmer if he could come inside and talk to him and Mr. Palmer said, "Come on in" and made a welcoming gesture with his hand. After Detective Carney entered the house, Mr. Palmer saw the other officers and objected to those officers coming inside. However, Detective Carney explained to Mr. Palmer that police protocol would not allow him to enter the house alone.

[*P16] Mr. Palmer emphasizes the following exchange during Detective Carney's testimony at the suppression hearing to assert that he involuntarily consented to the officer entering his house:

> Q: So, when you say he invited me into the house and you asked him if you could come in, exactly and as specifically as you can, how does that

26

exchange occur?

A: Do you mind - - **I *need* to come in and talk to you about some things**.
***

Q: And then I believe you said that another detective was behind you and also entered the home?

A: That's correct.

(Emphasis sic.). Mr. Palmer argues that Detective Carney was on a mission and his use of the word "need" indicated that Mr. Palmer was essentially required to involuntarily consent to the officer entering his house and submit to intimidation.

[*P17] However, Mr. Palmer uses an ellipsis to replace some particularly relevant testimony from Detective Carney regarding his recollection as to whether Mr. Palmer consented to the detective's entry into the house. A more complete version of the officer's testimony at the hearing regarding his entry into the house is as follows:

Q: So, he comes to the door, and you said he opens the door?   A: Yes, sir.

Q: Okay. And we want to get specific here. Does he have, like, a storm door, an inner door?

A: Two doors, the storm door and the interior door.

Q: And how does he open the door? I mean, what's the posture here?

A: Well, in my report, like I said, I saw him on the couch. As we're knocking, he - - I can only assume that he's hearing us talk outside. He kind of slinks off the couch. I don't know if he was attempting to hide. He slinks off the couch. We continue to knock. He comes to the door. He is out of breath, nervous. Opens the door. Opened the door and -- I've been – I've been a narcotics detective for years. I smell marijuana.

Q: Okay. As soon as he opens the door?   A: Yeah.

Q: All right. So, what do you do then?

A: I asked him to come in and talk, and he does invite us in. He was fine with me coming in. He was, like, I didn't invite those guys in. But, once again, police protocol, the officers I'm with are not going to let me go into a house by myself.

27

THE COURT: Can you say that again[?]

A: He let me into the house. I stepped into his living room. I believe it was either Nick Gray that followed me into the house, and Mr. Palmer said, I didn't invite him in. And I said, well, he's in here because I'm talking to you.

Q: So, when you say he invited me into the house and you asked him if you could come in, exactly and as specifically as you can, how does that exchange occur?

A: Do you mind -- I need to come in and talk to you about some things.

Q: That's what - -

A: Yeah.

Q: To the best you can recall, that's exactly what you asked him?

A: That would be pretty standard. That would be -- sir, you know, can I come in and talk to you?

Q: What -- how does he respond?

A: He says, well, come on in (indicating). He opens up the door, and I walk right in.

Q: I mean, he actually verbalizes it and -- I know I'm getting very specific for the record. You actually made a motion with your hand.

A: Hand (indicating).

Q: Like as if to welcome him in. Do you recall that he –

A: He said -- I asked, can I come in and talk to you? He said yeah. And I stepped into the residence.

Q: Okay. So -- and at that time, during that exchange, did Mr. Palmer do anything that you remember to indicate that he did not want you to come in?

A: No.

Q: And then I believe you said that another detective was behind you and also entered the home?

28

A: That's correct.
Q: And Mr. Palmer said, no, I don't want him in here, or -- A: Right.

Thus, Detective Carney's use of the word "need" while testifying at the hearing, when viewed in context with the rest of his testimony regarding his entry into the house, is not as outrageous as Mr. Palmer would have this Court believe. The detective repeatedly testified that he asked Mr. Palmer for permission to enter the house and Mr. Palmer allowed him inside.

[*P18] Detective Gray also testified that Mr. Palmer invited Detective Carney inside. Detective Gray testified that he entered the house after Detective Carney and that Mr. Palmer may have calmly asked who Detective Gray was, but Mr. Palmer did not do anything to indicate that he did not want Detective Gray in his house.

[*P19] Detective Akers testified that he positioned himself on the side of Mr. Palmer's house to make sure no one ran out the back of the house while Detective Carney was knocking on the front door. He could not see Detective Carney, but soon heard Detective Carney speaking to someone and could not hear what they were talking about. As Detective Akers came back to the front of the house, he saw Detective Gray entering the house. Detective Akers then entered the house as well.

[*P20] Mr. Palmer testified that he opened the door and Detective Carney snatched the storm door out of his hand, went chest to chest with him, and barked, "Get back" in his face. Mr. Palmer jumped back and the officers entered his house. They spoke to him about the FedEx parcel and Mr. Palmer asked if they had a warrant. The officers looked at each other and Mr. Palmer said, "You all need to get the fuck out of my house."

[*P21] H.M. testified that she was across the street and a few houses down from Mr. Palmer's house getting the brakes fixed on her car. She heard banging on a door and looked across the street to see people standing on Mr. Palmer's front porch. Once the front door was opened, she heard someone say what sounded like "Get back" and the men entered the house.

[*P22] A.C. testified that he lives past the intersection and two doors down from Mr. Palmer on the same side of the street. He was checking his mail and heard some beating on Mr. Palmer's door. He saw the officers snatch the door and heard someone say, "Get back." He admitted on cross-examination that he is friends with Mr. Palmer and that they talk to each other every day. He also admitted that he talked to Mr. Palmer about this incident after it happened.

[*P23] Detective Carney testified on rebuttal that he never told Mr. Palmer, "Get back," but he yelled, "Hey Matt" to Detective Akers who was around the side of the house.

[*P24] "When there is a conflict in the testimony of witnesses, as here, it is for the trier of fact to determine the weight and credibility to be given such evidence." *State v. Pamer*, 70 Ohio App.3d 540, 543, 591 N.E.2d 801, 8 Anderson's Ohio App. Cas. 466 (9th Dist. 1990). Here, the trial court stated in its order that it "considered all of the testimony, the demeanor of the witnesses and all the facts and circumstances in this case." The court found that "the testimony of the investigating officers is more credible" and "it has been demonstrated by clear and convincing evidence that their entry into the house and the subsequent interview was consensual." The court noted that although Mr. Palmer initially objected to more than one officer entering his house, he was told it was required for officer safety. The court found that "[Mr. Palmer] did not terminate his consent based upon that factor but allowed the interview to continue." The trial court ultimately found that "based upon all the facts and circumstances, the entry and continued presence of the officers in the house was with [Mr. Palmers] consent * * *."

[*P25] Upon review of the record, this Court accepts the trial court's findings as supported by competent, credible evidence. *See Burnside*, 100 Ohio St.3d at 154, 2003-Ohio-5372 at ¶8. The trial court was in the best position to resolve factual questions and evaluate the credibility of witnesses. *See id*. We conclude that the trial court did not err in finding that the detectives entered and remained in the house with Mr. Palmer's consent. Accordingly, the trial court did not err in denying Mr. Palmer's motion to suppress.

[*P26] Mr. Palmer's first, second, and third assignments of error are overruled.

*Palmer*, 2017-Ohio-2639 ¶¶8-25.

Petitioner fails to draw this court's attention to anything in the state court record

suggesting his ability to present his claims was frustrated through a failure of Ohio's review

process. Instead, Petitioner's Traverse argues the merits of his suppression motion—suggesting

the state courts' decisions were incorrect. (R. 19). As stated above, a federal habeas court does

*not* review the "correctness" of the state court decision. *Fulcher*, 459 Fed. App'x at 521.

The Sixth Circuit Court of Appeals has clarified that the "the *Powell* 'opportunity for full

and fair consideration' means an available avenue for the prisoner to present his claim to the

state courts, *not an inquiry into the adequacy of the procedure actually used to resolve that particular claim*." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (emphasis added). Therefore, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id*. In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, "[o]ur approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id*. at 640; accord *Harrington v. Warden, London Correctional Inst.*, 2013 U.S. Dist. LEXIS 158363 at *11, 2013 WL 5944193 at * 4 (S.D. Ohio Nov. 5, 2013).

Here, the trial court conducted a suppression hearing, heard argument from counsel, and issued an opinion explaining why it denied Palmer's motion. Petitioner's disagreement with the adequacy of the opinion or the outcome fails to state a claim for federal habeas corpus relief, as the Sixth Circuit has made clear that a state court "need do no more than 'take cognizance of the constitutional claim and rule in light thereof.'" *Riley*, 674 F.2d at 525 (quoting *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977)); *Good*, 729 F.3d at 640. The *Good* court concluded, "[a]pplying our test to [petitioner's] case is straightforward. [Petitioner] could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*." *Good*, 729 F.3d at 640; *cf. Putrus v. Smith*, 2013 U.S. Dist. LEXIS 164923 (E.D. Mich. Nov. 20, 2013) ("[T]he relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly

31

decided. Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim 'is simply irrelevant.'") (citations omitted).

In the present case, Palmer raised his Fourth Amendment claim before both the state trial and appellate courts. He has not identified any evidence to rebut the presumption that the procedure utilized was fair. As there was no obstacle or impediment to Petitioner's ability to utilize the state courts' review process for Fourth Amendment claims, his first three grounds for relief are not cognizable. *See, e.g., Brown v. Kowalski*, No. 18-1767, 2018 U.S. App. LEXIS 37243, at *4 (6th Cir. Oct. 11, 2018) (finding that reasonable jurists could not disagree with the district court's decision that a petitioner's "claim challenging the search of his vehicle could not be raised in a federal habeas corpus petition because the claim was considered by the state courts"). Therefore, it is recommended that his first three grounds for relief be denied.

**B. Ground Five: Sufficiency of the Forfeiture Sentence**

Respondent responds to Petitioner's Traverse asserting that Palmer explicitly waived ground five, and avers it is uncontroverted that ground five should be dismissed. (R. 25, PageID# 1279). Indeed, the Traverse states that "[s]ince petitioner['s] claim challenge[s] the forfeiture of assets and not the legality of his custody, petitioner agree[s] that this ground is not cognizable in federal habeas review. Petitioner hereby waives this ground." (R. 19, PageID# 1184). The court deems the fifth ground for relief withdrawn.

**C. Ground Six: Possession of the UPS Parcel**

In his sixth ground for relief, Petitioner asserts there was insufficient evidence to establish guilt beyond a reasonable doubt that petitioner actually possessed the UPS parcel. (R. 1). Respondent avers that the package arrived while officers were present at Palmer's house, that Palmer declined to allow officers to open it, and that officers proceeded to obtain a warrant and

discovered three pounds of marijuana in vacuum-sealed bags in the package. (R. 10, PageID# 66-67).

The United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979) (emphasis in original). "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to the state court's factual determinations and "[a]ny conflicting inferences arising from the record, including credibility conflicts, should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to the sufficiency of the evidence is entitled to "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury--not the court--to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees

with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6ᵗʰ Cir. Sept. 14, 2016) ("AEDPA and *Jackson* together create two layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from the evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the evidence claim.") (internal citations omitted).

After setting forth the standards applicable to sufficiency of the evidence claims and the statutory language of the charges against Palmer, the state appellate court addressed this argument as follows:[3]

> [*P42] R.C. 2925.01(K) states "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "[A] person may knowingly possess a substance or object through either actual or constructive possession." *State v. Hilton*, 9ᵗʰ Dist. Summit No. 21624, 2004-Ohio-1418, ¶16. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "Inherent in the notions of dominion and control is some authority over the object, not merely the ability to have access to it." *State v. Carlton*, 9ᵗʰ Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶11. "The State may prove dominion and control through circumstantial evidence." *State v. Rucker*, 9ᵗʰ Dist. Summit No. 25081, 2010-Ohio-3005, ¶30.
>
> ***
>
> [*P44] As Mr. Palmer only challenges the sufficiency of the evidence concerning (1) the connection between the money and his trafficking conviction, and (2) his

---

[3] The state appellate court addressed the arguments now raised in grounds five and six together. As ground five is withdrawn, those portions of the state appellate court's decision dealing with the substance of ground five have been omitted.

possession of the UPS parcel, we will limit our analysis to the relevant evidence relating to those two issues.

[*P45] The State proceeded at trial on a theory that Mr. Palmer was involved in trafficking marijuana by shipping cash to California in exchange for marijuana being shipped to him from California. The police seized 1,670.2 grams of marijuana and $24,475.00 in cash overall. Detective Chris Carney testified that his K-9 partner "Cruiser" alerted to a FedEx parcel sent by Mr. Palmer to California. After procuring a search warrant, he opened the parcel and discovered $18,000.00 in cash. Detective Nicholas Gray testified on cross-examination that for a K-9 to alert on money, the money would have to have been around narcotics in order to pick up the odor.

[*P46] The following day, Detective Carney went to Mr. Palmer's house with two other detectives to speak to him about the FedEx parcel. Detective Carney testified that he smelled marijuana as soon as Mr. Palmer opened the front door and Mr. Palmer admitted that he had just smoked marijuana. Mr. Palmer pointed to an ashtray on a table and Detective Carney saw a "blunt" in the ashtray. Mr. Palmer also admitted that he had shipped the $18,000.00 to California. He provided the officers with different explanations for shipping the money and later said it was for a marijuana investment in California. While talking to Mr. Palmer inside the house, Detective Carney could see a jar of marijuana on the dining room table and a marijuana grinder on the mantel of the fireplace.

[*P47] While awaiting a search warrant for the house, a UPS truck arrived and the driver dropped a parcel off on Mr. Palmer's front porch. The UPS parcel was addressed to Greg Palmer. During their investigation, the officers looked up Mr. Palmer's address, but found no one by the name of Greg Palmer listed as a resident there. Detective Carney testified that in the last six years he has not interdicted a single parcel containing narcotics that had the legal name of the recipient on it because it is easier for people to distance themselves from the parcel and claim that it does not belong to them. Detective Gray also testified that people typically have narcotics shipped to their house under a different name to protect themselves if law enforcement intercepts the parcel. Detective Gray also testified on cross-examination that it is different with currency because a person will not be able to claim an interdicted parcel containing money if it has fake names on it. Detective Carney testified that it is common for drugs and money to both be shipped at the same time as an exchange.

[*P48] Detective Carney testified that he asked Mr. Palmer if he could open the UPS parcel and Mr. Palmer said, "No." Mr. Palmer told the detective, "You need to get a warrant." The officers procured additional search warrants for both Mr. Palmer's house and the UPS parcel. Detective Carney testified that miscellaneous clothes and a hollowed-out pillow containing approximately three pounds of marijuana in vacuum-sealed Ziploc bags were discovered in the UPS parcel.

Detective Gray testified that he found $5,980.00 in cash inside of a work boot or shoe in an upstairs bedroom of the house. He also found a vacuum-sealed bag containing one pound of marijuana underneath clothes at the bottom of a clothes basket. Detective Carney testified that the marijuana packages found in the bedroom and in the UPS parcel were all in the same type of vacuum-sealed, Ziploc bags. Detective Carney also testified that a few additional grams of marijuana, a marijuana brownie, a couple digital scales, a food saver system, bags, bubble wrap, and mail with Mr. Palmer's name and address on it were also found in Mr. Palmer's house.

[*P49] After viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that (1) the money discovered in the FedEx parcel and in Mr. Palmer's house was connected to Mr. Palmer's trafficking in marijuana offense, and (2) Mr. Palmer had constructive possession of the UPS parcel delivered to his house.

[*P50] The evidence, if believed, established that the seized and forfeited money was connected to Mr. Palmer's trafficking offense. *See Standen*, 173 Ohio App. 3d 324, 2007-Ohio-5477, at ¶9, 878 N.E.2d 657. Mr. Palmer shipped $18,000.00 in cash via FedEx to California and a UPS parcel from California containing three pounds of marijuana in vacuum-sealed bags arrived on his doorstep the next day. Mr. Palmer eventually admitted that he sent the money to California for a marijuana investment. The UPS parcel was addressed to Greg Palmer, but the detectives found no evidence of anyone by that name living at Mr. Palmer's house. Two detectives testified that drug traffickers commonly use false names on parcels when shipping drugs. A similarly-packaged, vacuum-sealed bag of marijuana was found in Mr. Palmer's house along with $5,980.00 in cash and other contraband associated with the trafficking of drugs.

[*P51] The evidence, if believed, also established that although Mr. Palmer never physically accessed the UPS parcel, he constructively possessed it. The UPS parcel was delivered to the front porch of Mr. Palmer's house. Mr. Palmer refused Detective Carney's request to open it and then told the detective to get a warrant. These statements are assertions of authority over the parcel sufficient to establish dominion and control and, therefore, constructive possession of the UPS parcel. *See Hankerson*, 70 Ohio St.2d at syllabus; *see also Carlton*, 2013-Ohio-2788, at ¶11.

*State v. Palmer*, 2017-Ohio-2639, ¶¶39-51 (Ohio Ct. App. 2017).

Reviewing the state court's thorough determination on this matter, this court cannot find that the state court decision is an objectively unreasonable application of federal law. In this context, "What is essential to establish an element [of a criminal offense], like the question

whether a given element is necessary, is a question of state law." *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002) (*quoting Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)); *accord Ibrahim v. Hooks*, No. 1:17 CV 264, 2018 U.S. Dist. LEXIS 208749, at *29 (N.D. Ohio Sep. 27, 2018) (Knepp, M.J.). This court, therefore, cannot second-guess the state court's determination that Palmer's possession of the UPS package could be shown not only through actual possession but also constructive possession, or that the latter may be established under Ohio law by the knowing exercise of dominion and control over an object. Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found that the UPS package was in Palmer's possession, for the reasons set forth in the state appellate court's opinion. Palmer has failed to demonstrate that the state court determination resulted in a decision that involved an unreasonable application of clearly established federal law.

Therefore, the court recommends finding ground six to be without merit.

**D. Grounds Seven through Fourteen: Ineffective Assistance of Appellate Counsel**

Petitioner's grounds seven through fourteen all argue ineffective assistance of appellate counsel for failing to argue that trial counsel was ineffective by not raising certain arguments at the suppression hearing. (R. 1). Petitioner generally makes the conclusory allegation that the grounds he raises were stronger than the grounds trial counsel argued. *Id.*

The Supreme Court has held that a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Courts apply the two-part test for ineffectiveness of trial counsel, enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).The *Strickland* standard requires a petitioner to demonstrate that: (1) his counsel's performance was deficient; and (2) the allegedly ineffective assistance resulted in

prejudice to the petitioner, meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

Moreover, an appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Henness v. Bagley*, 644 F.3d 308, 317-18 (6th Cir. 2011) (*quoting Kimmelman*, 477 U.S. at 375).[4]

Where the state appellate court, as here, correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, its ruling must unreasonably apply that standard in order for the petitioner to receive habeas relief. *Knowles v. Mirzayance*, 556 U.S.

---

[4] A habeas petitioner's claim that counsel's performance was constitutionally ineffective with respect to a motion to suppress is analyzed under the two prongs of *Strickland*. *See, e.g., Wangler v. Sheldon*, 2015 U.S. Dist. LEXIS 177032, at *66 (N.D. Ohio Oct. 19, 2015) (*citing Robins v. Fortner*, 698 F.3d 317, 333 (6th Cir. 2012); *cf. Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) ("the failure to file a suppression motion does not constitute per se ineffective assistance of counsel").

111, 123 (2009) ("The question is not whether a federal court believes the state court's

determination under *Strickland* was incorrect but whether that determination was unreasonable -

a substantially higher threshold.") (internal quotation marks omitted). Federal habeas courts

employ "a 'doubly deferential' standard of review that gives both the state court and the defense

attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013);

*see also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state

court's] decision is thus doubly deferential. We take a highly deferential look at counsel's

performance through the deferential lens of § 2254(d).") (internal citations and quotation marks

omitted).

After correctly finding that *Strickland* controlled Palmer's claims, the state appellate

court addressed the ineffective assistance of appellate counsel claims as follows:

> Mr. Palmer argues that he received ineffective assistance of counsel because
> appellate counsel failed to argue that trial counsel should have moved to suppress
> the evidence on the bases that: (1) the FedEx parcel was seized without
> reasonable suspicion prior to the K-9 sniffing and alerting the officer to the parcel,
> (2) the FedEx parcel was unlawfully seized when the officer removed it from the
> FedEx premises without a warrant, (3) the chain of custody was broken and the
> FedEx parcel could have been substituted, altered, or tampered with when the
> officer removed it from the FedEx premises, and (4) the officer looking through
> the front window of Mr. Palmer's house was an illegal search.
>
> Mr. Palmer's trial counsel filed a motion to suppress and pursued several issues
> relating to incriminating statements, illegal detention, subsequent searches, entry
> into the house without consent, and insufficient probable cause for a search
> warrant. *See Palmer*, 2017-Ohio-2639, at ¶10. Again, "[c]ounsel need not raise all
> nonfrivolous issues on appeal." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994).
> Some issues may have arguable merit, but are "sufficiently problematical that the
> refusal to raise them cannot be assailed as an unreasonable professional
> judgment." *Id.*, quoting *Cunningham v. Henderson*, 725 F.2d 32, 36 (2d Cir.
> 1984). The record shows that a K-9 Unit alerted to a FedEx parcel and a search
> warrant was then sought and obtained. A large amount of cash was discovered
> inside the parcel and officers then went to Mr. Palmer's house to conduct a "knock
> and talk." Mr. Palmer has failed to show prejudice or deficient performance in
> appellate counsel's decision not to argue that trial counsel was ineffective in his

strategic decision to pursue seven appropriate legal arguments in his suppression motion, but not also the ones Mr. Palmer now recommends.

Mr. Palmer further argues that appellate counsel was ineffective for failing to raise an argument on appeal that the trial court should have granted the motion to suppress because. (1) the detective lied in his testimony regarding the time of the seizure and the circumstances surrounding issuance of the warrant, (2) the search of the FedEx parcel was an unconstitutional, warrantless search, (3) the detective lied in his search warrant affidavit.

Appellate counsel raised three separate assignments of error on appeal arguing that the trial court erred in denying the motion to suppress. *See Palmer* at ¶8. He argued that the FedEx parcel was unlawfully retained and the officers did not have consent to enter the house. *Id*. Once again, "[c]ounsel need not raise all nonfrivolous issues on appeal." *Campbell* at 53. The record does not support Mr. Palmer's perjury claims. Moreover, the search of the FedEx parcel was pursuant to a warrant that was challenged at the trial court level and found to be valid. Mr. Palmer has failed to show deficient performance or prejudice here.

*** 

Having reviewed the application for reopening, we conclude that Mr. Palmer has not met his burden of establishing that there is a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel. He has not shown that: (1) appellate counsel was deficient for failing to raise the issues that he now presents, or (2) there was a reasonable probability of success had counsel presented those claims on appeal.

(R. 10-1, PageID# 367-370; Exh. 30).

Neither the petition nor the conclusory arguments set forth in the Traverse sufficiently demonstrate that—utilizing the "doubly deferential" standard of review—the state courts unreasonably applied *Strickland*. For example, with respect to ground seven, Palmer asserts the state appellate court failed to consider the factors set forth in *Mapes v. Coyle*, 171 F.3d 408, 427-428 (6th Cir. 1999) regarding whether counsel overlooked stronger arguments on appeal. (R. 19, PageID# 1191). Palmer, however, does not recognize the correct habeas standard. It is not sufficient for him to argue that the state court's analysis was brief, poorly explained, or failed to acknowledge all applicable case law. *Harrington*, 562 U.S. at 98. Rather, "Where a state court's

decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

The court finds nothing unreasonable in the state court's finding that appellate counsel was not required to press every suppression-related claim Palmer could imagine. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983); *accord Wilson v. Hurley*, 108 Fed. Appx. 375, 379 (6th Cir. 2004) ("An effective appellate counsel does not need to raise every non-frivolous claim.") Moreover, in order to prevail, Palmer must not only demonstrate that appellate counsel was deficient because the arguments Palmer has put forward are stronger, but he must actually show that the Fourth Amendment claims he believes should have been presented would have been meritorious and resulted in a reasonable probability that the verdict would have been different. Petitioner has offered nothing but his own unsupported assertions on the latter, which are not sufficient to satisfy the standard.

**E. Grounds Fifteen and Seventeen: Ineffective Assistance of Trial Counsel**

In his post-conviction petition to vacate or set aside judgment, Petitioner raised several claims for relief, two of which largely correspond to his fifteenth and seventeenth grounds for relief. (R. 10-1, PageID# 404, 411; Exh. 37). Both grounds for relief assert ineffective assistance of *trial* counsel during the suppression hearing stemming from: (1) counsel's alleged failure to argue that the FedEx package was seized without reasonable suspicion, and (2) counsel's failure to argue that there was insufficient proof concerning the chain of custody of the package. (R. 1).

After the post-conviction petition was denied by the trial court and Palmer appealed the denial, the state appellate court addressed these claims as follows:

41

[*P10] In his petition for post-conviction relief, Mr. Palmer claimed that his trial counsel should have challenged the seizure of the FedEx parcel as an unreasonable seizure because the external characteristics of the parcel did not create a reasonable suspicion in order to seize the parcel and subject it to a dog sniff. He further argued that he received ineffective assistance of counsel because trial counsel failed to challenge the chain of custody of the FedEx parcel.

[*P11] We note that Mr. Palmer's ineffective assistance of counsel claims are not barred by the doctrine of res judicata. "When a defendant is represented by different counsel at trial and on direct appeal, res judicata ordinarily bars the relitigation of any ineffective assistance of counsel claims that could have been raised on direct appeal without reference to evidence dehors the record." (Emphasis deleted.) *State v. Pannell*, 9th Dist. Wayne No. 98CA0034, 1999 Ohio App. LEXIS 82, *5 (Jan. 20, 1999), citing *State v Lentz*, 70 Ohio St.3d 527, 1994-Ohio 532, 639 N.E.2d 784 (1994), syllabus. However, Mr. Palmer was represented by the same counsel at trial and on appeal, so his ineffective assistance claims are not barred by res judicata. The State likewise concedes that these claims are not barred by res judicata.

[*P12] "[I]n Ohio, a properly licensed attorney is presumed competent." *Gondor* at ¶62. "Counsel can provide effective assistance using numerous tactics in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel." *State v. Shirley*, 9th Dist. Summit No. 20569, 2002-Ohio 31, 2002 Ohio App. LEXIS 4, *20 (Jan. 2, 2002). To prove ineffective assistance of counsel, Mr. Palmer must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*. at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶34.

[*P13] Mr. Palmer attached several documents to his petition, including: (1) his own sworn affidavit, in which he simply avers in a single sentence that he received ineffective assistance of counsel, (2) four pages of a partial transcript, (3) the supporting affidavit for the search warrant of the FedEx parcel, and (4) his sentencing entry.

[*P14] The trial court stated the standard in *Strickland* and found that even though Mr. Palmer's motion to suppress was denied and his convictions were later affirmed on appeal, those results were not the product of ineffective assistance of counsel. The court noted that Mr. Palmer's court-appointed counsel argued a

42

suppression motion at two separate hearings. Mr. Palmer then retained counsel, who filed numerous motions on Mr. Palmer's behalf before representing him both at trial and on appeal. The court further noted the lack of evidence in the record and in Mr. Palmer's petition supporting his ineffective assistance claims, and found that the petition did not contain sufficient operative facts to warrant an evidentiary hearing.

[*P15] We conclude that the trial court's findings are supported by competent and credible evidence. In a suppression motion and at two suppression hearings, trial counsel's strategy was to challenge the officers' entry into Mr. Palmer's house and the validity of the initial search warrant to open the FedEx parcel. *See Palmer*, 2017-Ohio-2639, at ¶10-11. Counsel's decision not to pursue every possible angle is not ineffective assistance. *See State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶69. Moreover, the use of a drug detection dog does not constitute a "search" within the meaning of the Fourth Amendment and police are not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed. *See State v. Brooks*, 9th Dist. Summit No. 28070, 2016-Ohio-7025, ¶14, 72 N.E.3d 146. Counsel certainly cannot be said to be ineffective for failing to pursue an argument that would not have been successful. *See State v. Bailey*, 4th Dist. Ross No. 14CA3461, 2015-Ohio-5483, ¶42. None of the evidence attached to Mr. Palmer's petition supports a claim of ineffective assistance of counsel. The supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Mr. Palmer set forth sufficient operative facts to establish substantive grounds for relief. *See Calhoun*, 86 Ohio St.3d 279, 1999- Ohio 102, 714 N.E.2d 905, at paragraph two of the syllabus. *See also State v. Bishop*, 9th Dist. Lorain No. 97CA006905, 1998 Ohio App. LEXIS 5567, *13-14 (Nov. 25, 1998) ("[A] personal affidavit containing little more than vague assertions of inadequate counsel [is] inadequate to establish the substantive grounds for relief that R.C. 2953.21 requires be found before an evidentiary hearing is granted."). The trial court properly applied the standard in *Strickland*, and Mr. Palmer has failed to show either deficient performance by trial counsel or resulting prejudice. Mr. Palmer's claim that the trial court failed to address his ineffective assistance claims is without merit. Accordingly, we conclude that the trial court did not err or abuse its discretion in denying Mr. Palmer's petition for post-conviction relief without a hearing.

*Palmer*, 2018-Ohio-1486, ¶¶10-15.

The court need not reiterate the *Strickland* standard discussed in the previous section and also accurately set forth in the above quoted portion of the state appellate court's opinion. Also as stated above, when the primary allegation of ineffectiveness stems from defense counsel's

alleged failure to competently litigate a Fourth Amendment claim, the defendant must prove that his Fourth Amendment claim is meritorious. *Henness*, 644 F.3d at 317-318. Counsel is not ineffective for failing to raise weak or losing arguments.

With respect to Petitioner's claim that the FedEx package was seized and searched without reasonable suspicion, the state appellate court reasonably applied clearly established federal law that a dog sniff does not constitute a search. Further, Petitioner cites no clearly established Supreme Court precedent for the proposition that briefly removing a package from a conveyor belt to perform a dog sniff by a narcotics detecting canine amounts to a seizure. *Cf. United States v. Vasquez*, 213 F.3d 425, 426 (8th Cir. 2000) ("officers' actions in examining the outside of the package and then subjecting the package to a dog sniff … do not constitute a detention requiring a reasonable, articulable suspicion because, at that point, the officers had not delayed or otherwise interfered with the normal processing of the package."); *United States v. Lovell*, 849 F.2d 910, 916 (5th Cir. 1988) ("The momentary delay occasioned by the bags' removal from the conveyor belt was insufficient to constitute a meaningful interference with the [owner's] possessory interest in his bags. As a result, the agents' actions did not constitute a seizure."). In addition, Petitioner has not presented anything beyond unsupported conclusions to explain why he believes Detective Carney would not have been able to offer testimony satisfying the reasonable suspicion standard, if it is indeed required. *See U.S. v. Hernandez*, 313 F.3d 1206 (9th Cir. 2002) (finding that a postal inspector had reasonable suspicion sufficient to detain a package for a drug dog sniff test based on his specialized training and experience, and his identification of five factors that were part of drug package profile—name of return addressee could not be confirmed, label on package was handwritten, package was sent by express mail,

almost all seams on package were sealed, and package was mailed from known drug source state).

With respect to the chain of custody claim, the state appellate court again determined at counsel cannot be said to be ineffective for failing to pursue an unsuccessful argument, and that none of the evidence attached to Palmer's petition supports his claims. While Petitioner believes there were gaps in the chain of custody, Petitioner offers no support, only conjecture, for his position. There was nothing unreasonable about the state court's determination that the *Strickland* standard was not violated where counsel did not raise a conclusory, unsupported argument during a suppression hearing

### V. Conclusion

It is recommended that the Petition be DENIED because Petitioner has defaulted grounds four, sixteen and eighteen, for the reasons explained in section III.C., and the remaining grounds lack merit, as further explained in section IV.

s/ David A. Ruiz_____
United States Magistrate Judge

Date: February 16, 2021

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).**

45